999 F.2d 540
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gregory C. KRUG, Individually and as a Beneficiary of the
Eleanor Barron Krug Q-Tip Trust, Plaintiff/Appellant,
v.
VALLEY FIDELITY BANK AND TRUST COMPANY, a Tennessee
Corporation; Eleanor Barron Krug, a Tennessee
Resident, as Co-Trustees of the George
Charles Krug Trust,
Defendants/Appellees.
 No. 92-5612.
 United States Court of Appeals, Sixth Circuit.
 July 20, 1993.
 
 Before: GUY and BOGGS, Circuit Judges; and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 This pro se appeal focuses on a dispute arising from a sale of a piece of real estate in Tennessee. After careful consideration, we have decided that there is no need for oral argument in this case and exercise our authority to waive oral argument, pursuant to Rule 9(a), Rules of the Sixth Circuit. We AFFIRM the rulings of the district court.
 
 I.
 
 2
 In early 1990, Eleanor Barron Krug ("Eleanor") and Gregory C. Krug ("Gregory"), mother and son, respectively, were co-trustees of the George C. Krug Trust (the "Trust"). One of the assets of the Trust was a parcel of real property (a residence) located at 235 Jones Bend Road in Louisville, Tennessee (the "Jones Bend Property" or "Property").
 
 
 3
 In February 1990, Gregory wanted to buy the Property from the Trust. Eleanor, on behalf of the Trust, offered to sell the Property at "fair appraisal." Based on an appraisal done in July 1988, Gregory and Eleanor believed that the Property was worth $465,000.
 
 
 4
 While attempting to secure financing for the purchase, however, Gregory learned from his appraiser that the Jones Bend Property was then worth no more than $275,000. Another appraiser, hired by Eleanor's bank, Valley Fidelity Bank and Trust Company ("Valley"), confirmed the $275,000 valuation.
 
 
 5
 Gregory accordingly offered $275,000 for the Property in May 1990. Eleanor rejected the offer, requesting $375,000. She also took several actions, including removing Gregory as a co-trustee of the Trust and appointing Valley in his place.
 
 
 6
 Valley and Eleanor then instituted in June 1990 a lawsuit against Gregory and other entities in the Chancery Court in Knox County, Tennessee. They sought to validate their actions, particularly the removal of Gregory as a co-trustee. Gregory, in turn, filed a counterclaim against them, alleging, among other things, that Eleanor had violated her fiduciary duties and caused damage to the Trust by refusing to sell the Jones Bend Property.
 
 
 7
 The Knox County lawsuit ended favorably for Valley and Eleanor. After trial, the Chancellor of the Knox County Chancery Court found merit in most of Valley and Eleanor's claims in the complaint and dismissed all of Gregory's claims in the counterclaim. In particular, the Chancellor concluded that Gregory had failed to prove the allegations that Valley and Eleanor had violated their fiduciary duties in retaining the Jones Bend Property as a trust asset. The Chancellor entered a judgment in favor of Valley and Eleanor on May 5, 1991.
 
 
 8
 In July 1991, Gregory again thought about purchasing the Jones Bend Property. He approached Valley and Eleanor regarding the sale of the Property, which by then had been listed for sale with a realtor.
 
 
 9
 Several letters about the terms of the sale were then exchanged between Gregory and Valley and Eleanor. Gregory thought that a contract had thus formed; he sent a $5,000 check as a "good faith" deposit. Valley and Eleanor did not think so, however, rejecting the check and calling off the deal at that time.
 
 
 10
 On August 27, 1991, this diversity lawsuit ensued. Gregory alleged in his complaint that through the exchange of letters, a valid contract had formed between the parties, requiring specific performance and payment of all selling expenses and closing fees by the Trust.
 
 
 11
 Valley and Eleanor then filed a "motion to dismiss and for sanctions." After oral argument, when it became known that the parties were contemplating on consummating the sale of the Jones Bend Property, the district court established a trial date on the question of allocating selling expenses and closing costs only. No order followed immediately.
 
 
 12
 Subsequently, while the "motion to dismiss and for sanctions" was pending, Gregory filed a motion to amend under Fed.R.Civ.P. 15. In the proposed amended complaint, he added a state-law negligence claim against Valley, alleging that because of Valley and Eleanor's "negligent handling of the trust residence [the Jones Bend Property]," J.A. at 19, the value of a trust asset (the Property) was not maximized, causing loss to the Trust. The amended complaint specifically mentioned that Valley and Eleanor had been negligent in refusing to sell the Property to Gregory in May 1990. The amended complaint further stated that "specific performance issues" in the initial complaint have "already been decided" by the court. J.A. at 16.
 
 
 13
 On January 27, 1992, the district court issued a memorandum opinion addressing both motions. The court first suggested that since the parties had consummated the sale of the Jones Bend Property on December 31, 1991, the primary issues in the original complaint concerning specific performance of the real estate contract for the Property were effectively moot. The district court then observed that since the "plaintiff's remaining claims in the original complaint ... are completely subsumed in his proposed amended complaint," J.A. at 22, it would only address the amended complaint.
 
 
 14
 In so doing, the district court ruled that since the negligence claim contained in the proposed amendment had been or could have been raised in the prior Knox County litigation, the claim was barred by the doctrine of res judicata under Tennessee law. The court also denied sanctions against Gregory.
 
 
 15
 About two months later, the district court issued a memorandum opinion on the question of allocating selling expenses and closing costs. After conducting a "paper trial," reviewing the written submissions only, the court concluded that the Trust was not required to pay all of selling expenses and closing costs. The court found that the exchange of letters had created no contract between the parties regarding selling expenses and closing costs. The district court reasoned that the parties had violated Tennessee's version of the "mirror image rule," requiring an effective acceptance to be identical to the offer and unconditional. The court pointed out that Valley and Eleanor's acceptance was conditional on closing occurring within a certain time limit.
 
 
 16
 Finding no binding contract between the parties, the district court then allocated selling expenses and closing costs under the prevailing Knoxville, Tennessee custom and practice. Gregory was ordered to pay his share, $3,320.54, to the Trust.
 
 
 17
 Gregory appeals from both rulings of the district court.
 
 II.
 
 18
 Gregory challenges the district court's rulings as follows: first, he argues that his motion to amend should have been granted because the doctrine of res judicata did not bar the negligence claim in the proposed amended complaint; and second, he contends that the court's order requiring him to pay a part of the selling expenses and closing costs ($3,320.54) incurred in connection with the sale of the Jones Bend Property to the Trust pursuant to the Knoxville, Tennessee custom and practice was erroneous because a binding contract governing the allocation of selling expenses and closing costs was in effect. We are persuaded by neither argument.
 
 A.
 
 19
 First, we think that the district court correctly denied Gregory's motion to amend the complaint under Rule 15(a). The proposed amendment, which was effectively the only pleading in this case to consider after the resolution of the specific performance issues in the original complaint and after the setting of a trial date for the allocation of selling expenses and closing costs, could not withstand a motion to dismiss. See Hoover v. Langston Equipment Associates, Inc., 958 F.2d 742, 745-46 (6th Cir.1992).
 
 
 20
 Under Tennessee law, which governs this diversity case, Gregory's negligence allegations contained in the amended complaint are barred by the doctrine of res judicata. As we stated in Whitfield v. City of Knoxville, 756 F.2d 455 (6th Cir.1985),
 
 
 21
 [t]he Tennessee courts have held that if a second lawsuit involving the same parties acting in the same capacities and touches the same subject matter as the first lawsuit, then the principles of res judicata apply.
 
 
 22
 Id. at 459. And we noted there that the scope of res judicata is wide: it bars consideration of all claims that were or reasonably could have been litigated by a party in the prior court action. Id.
 
 
 23
 This case falls well within that broad confine. Gregory's negligence allegations in the proposed amended complaint regarding Valley and Eleanor's mishandling of a trust asset--the Jones Bend Property--are essentially the same as the rejected "breach of fiduciary duty" allegations against Valley and Eleanor with respect to the Property in Gregory's counterclaim in the Knox County lawsuit. In both cases, Gregory, as a former co-trustee and a beneficiary of the Trust, claimed that Eleanor and Valley, the co-trustees, caused loss to the Trust by refusing to sell the Jones Bend Property to him in May 1990. Indeed, to the extent that there is any real difference between the present negligence claim and the prior breach of fiduciary duty claims regarding the failure to sell the Property, it appears that the difference is nothing more than a mere cosmetic changing of the labels for the claims.
 
 
 24
 Further, we cannot accept Gregory's argument that he could not have brought the current negligence claim in the amended complaint any earlier. According to Gregory, he could not have alleged this negligence claim in the Knox County litigation because Valley and Eleanor had not acknowledged the depreciation of the Jones Bend Property until sometime after the conclusion of that litigation. Contrary to his assertion, however, it appears that Gregory had the central factual bases to make the same claim--indeed, did make such a claim in the Knox County litigation--after learning of the substantial disparity between the valuation results of the 1988 and 1990 appraisals of the Property. The fact that Gregory did not obtain Valley and Eleanor's purported admission--the last piece of fact further supporting Gregory's depreciation argument--until after the conclusion of the Knox County litigation is not sufficient to allow him to avoid the broad reach of the doctrine of res judicata under Tennessee law.
 
 B.
 
 25
 Second, we also believe that the district court correctly determined that no contract had formed regarding "selling expenses and closing costs." A review of the letters exchanged between the parties appears to indicate so.
 
 
 26
 Under common law, "a purported acceptance which adds qualifications or conditions operates as a counter-offer and thereby a rejection of the offer. This is so even if the qualification or condition relates to a trivial matter." John D. Calamari & Joseph M. Perillo, The Law of Contracts, § 2-21(a) at 101-02 (3d ed. 1987). This rule has been referred to as a "mirror image rule." Id. at 102.
 
 
 27
 Tennessee follows the "mirror image rule" closely. "An acceptance, to be effectual, must be identical with the offer and unconditional." Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 31, 257 S.W. 398, 402 (1924). Accordingly,
 
 
 28
 a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation unless the party who made the original offer renews it, or assents to the modifications suggested.
 
 
 29
 Id.
 
 
 30
 In this case, Valley's acceptance letter dated August 7, 1991, which contained the terms regarding the payment of selling expenses and closing costs, was not unconditional, or identical to, Gregory's offer letter dated August 5, 1991. Among other things, Valley's letter requested that "closing of the sale be held within sixty (60) days of [Gregory's] receipt of this acceptance, or at such earlier date as we may mutually agree." J.A. at 11. Moreover, Gregory did not subsequently accept Valley's counter-offer by writing or conduct. Notwithstanding the dispatch (and rejection) of Gregory's "good-faith" deposit, there was uncontradicted evidence indicating that there was no "meeting of the minds" regarding the question of when closing would take place, in light of the unresolved issues of the amount of down payment and the payment of selling expenses and closing costs. See Supplement to J.A. 5-8. To be sure, no closing took place within the time allotted in Valley's August 7, 1991 letter. Accordingly, we agree with the district court that no contract governing the allotment of selling expenses and closing costs existed in this case under Tennessee law.
 
 III.
 
 31
 For the reasons stated above, the rulings of the district court are hereby AFFIRMED, pursuant to Rule 9(b)(3), Rules of the 6th Circuit.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation